The next item on the calendar is David Kaplan v. Reed Smith. Thanks, I could use some more water. Thank you very much. Well, no one got shot in this case, right? I'm sorry. No one got shot here. No one got shot in this case. May it please the Court, Gary Menet for the appellant, Reed Smith. The District Court's memorandum in order in joining Reed Smith's New York State Court action against former co-counsel Wohl was error for multiple independent and sufficient reasons. Were the injunction allowed to stand, Reed Smith would be left without a forum to litigate its tortious interference claims. Why didn't Reed Smith ask for fees before Judge Buchwald when she was deciding the case? Well, it was Judge Cattell at that point, but they determined . . . What did it change? Judge Cottle awarded the fees. Yes, we don't know why there was a change in the case assignment, but Judge Cottle had the case . . . Did he participate in settlement negotiations? I don't know the answer to that. Okay. But he had the case. When the fees were awarded, he entered the final judgment. Then Reed Smith filed the New York State Court action, and then when the plaintiffs . . . When was Judge Buchwald appointed? Before Reed Smith filed in New York State? No, after that, when the motion was made to stay the New York State Court action. As far as I know, that's . . . Oh, and that motion went to Judge Buchwald . . . Instead of Judge Cottle. As a new case or whatever? It was not filed as a new case. It was filed as a motion within the existing case, but for whatever reason, it was not assigned to Judge Cottle. It was assigned to Judge Buchwald. Yeah, we don't know. It's the mysteries of . . . I don't think any of the parties know why that was. Okay. Continue. So why didn't . . . But my question was, why didn't Reed Smith make a motion for fees before Judge Cottle when he was deciding fees? Well, Judge, Reed Smith at that point had only been in the case for a short period of time. Aha. That's the reason, right? Yeah, a number of days, and so . . . And that really gets to the heart of the matter, which is that their allegation in state court is that what happened here is that Mr. Emanuel, who had been disqualified, quickly realized because of contact from defense counsel at Paul Weiss that there was a potential settlement in the offing and then seized upon some potential conflicts. Well, they were told there was a potential conflict. Weren't they told? Yes. But it would have been prudent not to involve Reed Smith if they thought there was a conflict. Well, I mean . . . They had just been through this whole thing with Quinn Emanuel, right? I mean, that's a factual issue that we dispute, but we believe that the conflicts at issue, two of which involved prior relatively minor, we think . . . We're not getting to the merits of whether there were conflicts or not, but you don't deny that they were told by defense counsel that there might be a potential conflict. Yes, that is correct. So, that would be a reason not to involve Reed Smith in the settlement negotiations? Well, that will certainly . . . Assuming that the injunction is lifted and the case goes forward in state court, I'm sure that they will raise that as a defense and say that Reed Smith was terminated for a cause because these conflicts arose and so they had justification to terminate Reed Smith. You know, and our view in that case is that no, what was going on here was that existing counsel saw an opportunity to push Reed Smith out of the case to block them from being involved in the settlement negotiations to prevent them from doing additional work and earning a substantial fee and that that was tortious and that we're entitled to damages for that. Now, it's undisputed that Reed Smith got notice of the proceeding before Judge Codal and was invited to appear to make a fee application? That is beyond dispute. In fact, Reed Smith withdrew from the case and appeared before Judge Codal at that hearing. So, you know, the first . . . Reed Smith was present at the hearing before Judge Codal on fees but made no request for fees? That's correct. And why was that? Well, as I said, Reed Smith made a determination that because they had been in the case for a short period of time and they did not want to delay the award of fees, they made a decision not to seek an award of fees at that time. But to make it later? Well, that again . . . you know, again, you're getting to really what's the question here. And the question is whether . . . you know, the appellee's position and Judge Buchwald's decision really rests on the fundamental issue of whether or not a state court . . . the state court tort action is a subterfuge or some way to seek a fee that they could have sought before Judge Codal. And our position is that it is not. Why not? Because . . . because . . . well, and there . . . let me answer that in two parts. First of all, the elements of the claims are different. The elements of the claim for . . . I'm sorry. An element . . . the elements of the claim for fees, the underlying claim for fees, and the elements of the tortious interference claim are different. Right. And the damages are different. Why you didn't seek fees when you could have? Well, you know, the reason we didn't seek fees when we could have is because we had only been in the case for a short period of time. We didn't want to interfere with the award of fees. And we're not saying that Wohl or Plaintiff's Counsel was awarded too much fees or that they're not entitled to the fees that they were awarded. What we're saying is that they interfered, they intentionally interfered with the contract between Reed Smith and the plaintiffs, the class plaintiffs. And as a result of that, Reed Smith was unable to do additional work and obtain a substantial fee. Now . . . What was their motive for interfering? In fact, Mr. Wohl in his affidavit says that he conveyed to defense counsel that there was a window to settle the case before new counsel was retained. So it was to . . . it had to do with who was going to get the fees. I don't . . . you know, I think that that particular issue won't be much in dispute. I mean, I don't think that they're going to contend . . . But you just told us that Reed Smith hadn't done anything. Well, they had entered appearances in the case. They had done some work, preparatory work. But on the tortious interference claim, we're not limited. And this is . . . again, I'm getting back to the answer I was going to give you to your previous question, Judge Pooler, which is that . . . . . . had they made a fee application . . . But it would have been a small amount. Arguably, it would have been a small amount. And they may argue in the State court that that amount is gone and that would be, you know, mitigation of damages, et cetera. That's an issue that hasn't been resolved. But there's also New York State law, and this is the Court of Appeals Guard Life case. Let me give you the site for that. 1980 Court of Appeals, 406 New England, Northeast 2nd, 445. The Guard Life case, the Court of Appeals draws a distinction. It says there is a difference between contract damages and damages available for tortious interference of contract. We're not limited in the New York State court case to just . . . You want to punish them for bad behavior. Yes. We're entitled to punitive damages. That's correct. But not just punitive damages. Also, the damages would be measured by what we could have obtained, compensatory damages for what we could have obtained. Are you talking about a larger settlement, what you could have obtained? It could have been a larger settlement, but . . . Very speculative. But more likely it's that they would have been entitled to a substantial fee had they been allowed to participate in the settlement process. They could have added to the settlement process, but also they would have been entitled to a larger fee. Okay. All right. Well, you've reserved two minutes for rebuttal. I see your time has expired. Thank you, Your Honor. We will hear from the appellee cross-appellant. Thank you, Your Honor. May it please the Court, Anthony Paduano for the appellees. Ours is a very simple case. It's about respecting an order of a Federal court. It's a very simple case because we have officers of the court here who have evaded a Federal court order. It's more so here because this is a very blatant evidence of a Federal court order. It's not just that Reed Smith was on notice that it had the opportunity to apply for fees, but it was in writing. Mr. Wohl gave them written notice that they should apply for fees. It's in the retainer agreement that they signed with class. In their withdrawal to Judge Codall, they noticed on page 428 of the appendix that they were going to file a charging lien. They never did anything. They knew that they had done no work in the case. They were in the case for a total of two days. Four days after they . . . seven days after they solicited Mr. Wohl once they saw that Quinn Emanuel had a conflict that took it out of the case. Judge Codall was very concerned about class counsel's ability to try the case at this point. Reed Smith solicited Mr. Wohl to come into the case. Reed Smith's total exposure to the case was eight days. They disclosed this conflict. The conflict wasn't a mild one. It was a lawyer. Reed Smith had advertised its services of all 1,700 of its lawyers being available to class counsel. Out of the blue. Its conflict wasn't a mild one. One of its attorneys had represented SAC Capital in the ongoing government investigations into SAC Capital. This wasn't a little case. This was one of the most prominent investigations the government had going on. As soon as this was disclosed, after Reed Smith had made an appearance before Judge Codall in the case but had done nothing, that's when, after they'd signed the engagement letter, that's when they made the disclosure of the conflict. That is completely inappropriate behavior for anyone, especially counsel, very greedily looking for a fee. Completely inappropriate. The concept then of ignoring Judge Codall's very clear order which says, it's your obligation, if you've got anything to do with this case, if you're counsel, class counsel is not going to file a fee application for you. It's incumbent upon you to do it. It's in their retainer agreement and it's in the court's order. They did nothing. Mr. Lowe being careful because lawyers have different views of the world and Reed Smith didn't like being fired. Lawyers . . . Were they fired, actually? They were fired. They deceived . . . They were fired by class . . . By the plaintiffs. They . . . How were they fired? Was there a letter or . . . I believe Mr. Wohl picked them up and told them, you're out. They withheld a conflict. That's very serious. They withheld . . . That's bad behavior on their part as well. Your Honor, they did not disclose after . . . You would win on the merits in state court. Why are you fighting to keep out of state court? Your Honor, Judge Codall's order must be respected. All those claims should have been made for attorney's fees by March 23, 2017. Judge Scarpullo in the trial court, after explaining to Reed Smith's counsel how Rule 23 fee applications work, said that their claims, after saying not nice things about their claims, which is in our record here, said that their claims were a stretch. Because Judge Codall's order said, if you've got a claim that concerns attorney's fees, which their claims here clearly are, they should have been made in the district court before Judge Codall. Your position is that Mr. Wohl and his firm can be entitled to the fee that they were awarded, and simultaneously, I think this is almost a direct quote, they can be held liable for a tort that they committed, and that the two things can be separated out. But, Your Honor, what's really the tort? And that's what Starcross Appeals is about. Tortious interference with what? There's no tortious interference. They had an absolute right to file before Judge Codall. The order says that. Their fee engagement letter says that. Apply. Irrespective of the fact that whether we get fired or terminated, this is a terminable contract. They don't have lifetime tenure. They get fired. Trial lawyers get fired all the time. What about the issues before us, the jurisdictional issues, and the injunctive . . . the right of Judge Buchwald to issue the injunction? I think there's nothing more important than a federal court protecting its jurisdiction. The jurisdiction here emanated from Judge Codall's order. That's ongoing. That's continuing. We've laid it out in our papers well. They've got nothing. Assume that Judge Buchwald had jurisdiction. Talk about the anti-injunction order where she tries to stop the case. The relitigation exception clearly covers this. But it's not the same issue. They are claiming tortious interference with their contract. That's not the same . . . Sure. The issues of claim preclusion, issue preclusion, these matters whether they were entitled to anything as the result of what they do. They're lawyers for a living. Whether they're entitled to be paid for whatever it was they did. For the brief period of time they were connected to this class, these plaintiffs, Mr. Wohl, et al. That was before Judge Codall. The state court claim, as I understand it, is not about necessarily fees, but about Wohl's interference with their right to participate in the case. Judge Buchwald calls it that in all but name. She says that this matter has been decided. She says that this claim was presented below and before. And that's why we're part of the exception. And that's why we get to bar this. And that's what they're really suing for. They've dressed it up . . . Another exception, which is to protect or effectuate its judgments. And the court had granted a judgment settling the fees. Yes. I mean, that's what this is about. That's why they're covered by the exception. It's a different exception than the aid of the court's jurisdiction. Yes. Because the matter was terminated, was it not? No, it's not. The order is still ongoing. That's why the application was made back before Judge Buchwald. Judge Codall's order is continuing, so it's exclusive.  That's why they've done . . . I'm sorry. What was the state of the action, of the original class action, at the time that the plaintiffs brought their action in state court? Payments in the class were just made out last month, I believe. Continuing payments. So it's exclusive and ongoing. I don't know if the matter . . . The matter in the docket wasn't terminated because our action, attempting to stay, was made back before Judge Buchwald. A couple of things that were said. Judge Codall recused himself for reasons we don't know. Reed Smith was not at the fee hearing itself. It did not appear, but it did . . . When it withdrew, it did make that note that it was going to file a charging lien. It subsequently did not . . . Which it didn't do because it wouldn't . . . How would it have done before Judge Codall? It had deceived the court when it appeared. You can't appear in front of a court if you've got a conflict. You can't represent clients if you've got an undisclosed conflict. They had deceived class counsel as to whether they could appear or not. Paul Weiss, class counsel for SAC Capital, had raised that very day an other conflict that Reed Smith had. That hadn't been worked out. That may or may not have been worked out. But this one, the one about FOW and the ongoing government investigations, that hadn't been disclosed at all. That was the issue at all. But on our cross appeal, these matters, the two claims they filed, the unjust enrichment claim and the tortious interference claim, they can't make those claims out as a matter of law. Our request is . . . But on the relitigation exception, there's one element of the claim that Reed Smith has in state court that wasn't decided by the fee application, and that's the element of tortious interference and unjust enrichment. That didn't come up at all. But this fee engagement, the engagement letter, it's a terminable contract at will. They can't make out the claims as a matter of law in any way. Judge Buchwald is there. In Ackman, this decision was reached on the merits. The Marino case we've cited, that's from the Fourth Circuit. These claims do get reached on the merits. We're not supposed to go back and do this. For all intents and purposes, Judge Buchwald has decided this, because in relitigation, the court's order is there. Judge Koto's order stands for nothing else. They're supposed to have presented this claim. So their measure of damages, they say in the brief on page 6 and 9, is all about attorney's fees. There's nothing else. They can't be compensated for anything else regarding this work. So to send it back for any purpose, whether even it's for Judge Buchwald, that's not appropriate. It doesn't give the due respect that Judge Koto's order is entitled to. And they've not cited a case from this circuit or any other circuit where this has been allowed to happen. There's some cases where there's contract, something like that, between lawyers. There's no contract between Mr. Wohl and Reed Smith. That didn't occur. This is a theory they've got that deliberately tries to escape the scope of Judge Koto's order. That's inappropriate. You can imagine if plaintiff's lawyers get their hands on this, because they fight all the time about allocation of fees. They don't have a case that stands this. They're seeking new law from this court. Thank you, Your Honor. Thank you, counsel. You reserved two minutes, was it? Thank you, Your Honor. With due respect to counsel, the appellees in this matter continue to argue this case as if what Reed Smith did was go to state court and sue the class for the contract claim for fees. If Reed Smith had done that, that would be Wiley, right? In the Wiley case, which this Court decided in 2012. What happened in Wiley is a slightly different fact pattern than that, but much more analogous to that case than this case. What happened in Wiley was you had a class action. Milberg Weiss got a fee. Then the class members or some group of the class members tried to sue Milberg Weiss in state court. And what this Court said is you can't do that because once there's been a fee award in the federal class action, implicit in that fee award, one of the standards is that the representation was adequate. And by suing your lawyers in state court, you're saying the opposite. You're saying that the — But your case in state court has different elements. Our case in state court is completely different because what we're doing in state court is we're saying we're not suing the class for the fee. We're suing Wohl. We're suing the co-counsel, saying you tortiously interfered with us so that we could not earn — Well, aren't you also saying that Wohl's firm was unjustly enriched? And wouldn't that be in contradiction to Judge Kodal's ruling on the fairness and reasonableness of the fees? Well, you know, that's — there is some correctness to that, obviously. And in Wiley, the Court addresses that in the first part of the decision. It says generally, even a federal court dealing with a state court, generally you do not get to dictate to another court what the preclusive effect is of your order, right? It's only if it really offends federal jurisdiction. Here, that's for Judge Scarpa to decide in New York State Supreme, and there's no reason to think that she'll get it wrong. And they can certainly argue to her that there is some preclusive effect to the fact that Reed Smith did not make an application for fees in federal court. We're not saying that they can't seek that preclusive effect in state court. But what we're seeking in state court goes beyond that, and it is certainly not completely encapsulated by that. And that's why this case is different than Wiley, because in Wiley, there could be no favorable result for the plaintiffs in state court that would not, by necessity and definition, offend what had happened in federal court. You could get a favorable result without attacking the fee award. Exactly. Because you're talking about the behavior of co-counsel. Correct. Bad behavior. All right. I think we understand it. Thank you, Your Honor. Thank you. We'll reserve decision.